```
              IN THE UNITED STATES DISTRICT COURT
            FOR THE WESTERN DISTRICT OF TENNESSEE
                        WESTERN DIVISION
```
_____

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | No. 19-cr-20231-MSN |
| ) | |
| **AMIRI JOHNSON,** ) | |
| ) | |
| **Defendant.** ) | |

_____

## REPORT AND RECOMMENDATION
_____

Before the court by order of reference is defendant Amiri Johnson's Motion to Suppress. (ECF Nos. 30 & 31.) The undersigned held an evidentiary hearing on the motion on August 11, 2020. (ECF No. 58.) For the following reasons, it is recommended that the motion be denied in part and granted in part.

### I. PROPOSED FINDINGS OF FACT

The following proposed findings of fact are based on the testimony of Detectives Taylor Garrison and Andrew Criner, both of whom credibly testified at the evidentiary hearing. Ashley Gooch also testified at the hearing on behalf of Johnson. To the extent Gooch's testimony conflicts with the detectives' testimony, the undersigned finds that such testimony relates to facts that have no bearing on the issues presented by the motion. Importantly, it is undisputed that the detectives were authorized to enter the residence to search for Johnson and that the firearm was found in

the location testified to by the detectives.

Detectives Garrison and Criner work for the Shelby County Sheriff's Office, where they specialize in fugitive apprehension. On March 12, 2019, Detective Garrison obtained a search warrant for a residence on Belle Haven road to search for Amiri Johnson, who had an outstanding arrest warrant for aggravated burglary and robbery. Neither warrant authorized a search for any other persons or items. Later that day, Detectives Garrison and Criner, along with a number of other officers, executed the warrants. Ashley Gooch, the owner of the house and Johnson's then-girlfriend, answered the door and allowed the officers in. Once inside the house, officers looked in each room for Johnson. After this initial inspection, officers began looking in places in the home that were large enough for a person to hide.

Upon entering the main bedroom, Detective Criner looked in places where Johnson might be hiding, including inside the king-size bed's mattress. Both Detectives Garrison and Criner testified that it is common for fugitives to hide in hollowed-out furniture, including mattresses and box springs. Detective Criner testified that he has executed thousands of search and arrest warrants over the course of his career and that he has found approximately 100 fugitives hiding in mattresses or bed box springs. To see if this was the case here, Detective Criner drew his weapon and peeled

back the bed's mattress topper. In the process, he found a handgun hidden between the mattress and the mattress topper, which was then seized.

A few minutes later, Johnson was found hiding in a storage area inside a wall that was covered by a kitchen cabinet. After he was placed in custody, a detective asked Johnson if there were any guns in the house. Johnson said there were and asked Gooch to "get my gun with the beam on it." Johnson had not been read his Miranda rights at the time he made that statement. A federal grand jury in the Western District of Tennessee returned a two-count indictment against Johnson on August 29, 2019, charging him with violations of 18 U.S.C. § 922(g)(1) and 18 U.S.C. § 922(g)(9).

Johnson now moves to suppress the gun and his statement to law enforcement. He contends that the search of the bed and seizure of the gun exceeded the scope of the search and arrest warrants in violation of the Fourth Amendment. He also argues that his statement to law enforcement was obtained in violation of his Miranda rights.

## II.   PROPOSED CONCLUSIONS OF LAW

**A.   Suppression of Gun**

The Fourth Amendment provides, in relevant part, that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not

-3-

be violated[.]" U.S. Const. amend. IV. Warrantless seizures are "'per se unreasonable under the Fourth Amendment – subject only to a few specifically established and well-delineated exceptions.'" Arizona v. Gant, 556 U.S. 332, 338 (2009) (quoting Katz v. United States, 389 U.S. 347, 357 (1967)). One such exception is the plain view doctrine. "Under the plain view doctrine, officers may seize an item without a warrant if: (1) the item seized is in plain view, (2) the item's incriminating character is immediately apparent, (3) the officer is lawfully in the place from where the item can be plainly seen, and (4) the officer has a lawful right of access to the item." United States v. Spencer, No. 18-CR-20322-MSN, 2019 WL 3080759, at *3 (W.D. Tenn. Apr. 12, 2019), report and recommendation adopted, No. 18-CR-20322-MSN, 2019 WL 2207681 (W.D. Tenn. May 22, 2019) (citing United States v. Mathis, 738 F.3d 719, 732 (6th Cir. 2013)).

The parties agree that neither the warrant to search the Belle Haven residence nor the warrant to arrest Johnson authorized a search for guns. The parties also agree that Detective Criner would not have been able to see the gun without moving the mattress topper. The government argues that the seizure was nonetheless permitted under the plain view doctrine. The search of the bed was lawful, the government contends, because (1) the warrants authorized a search for Amiri Johnson, who could have been hiding

-4-

in the mattress or bed box spring, and (2) the protective sweep doctrine[1] permitted the officers to search places in the house where a person could be hiding, including the mattress or box spring. Johnson disputes that a reasonable officer would believe that a person could hide in a mattress or box spring. Johnson also argues that the search of the bed was pretextual and that the detectives' true motivation in searching the bed was to locate evidence related to an ongoing murder investigation. Johnson does not raise any other arguments against the application of the plain view doctrine.

The undersigned first considers whether a reasonable officer would believe that a person could hide inside a mattress or bed box spring. The Fourth Amendment allows "officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person." United States v. Arvizu, 534 U.S. 266, 273 (2002). In the context of police protective sweeps, the Sixth Circuit has noted that it would be reasonable for an officer to lift up a mattress and search between it and the bed box spring "because there is 'plenty of room' for

---

[1] The protective sweep doctrine allows officers executing an arrest warrant in a home to perform "a cursory inspection of those spaces [in the home] where a person may be found" to protect officer safety. Maryland v. Buie, 494 U.S. 325, 335 (1990).

someone to hide under a box spring." United States v. Lanier, 285 F. App'x 239, 242 (6th Cir. 2008) (relying on officer testimony that it was "common practice" to search under mattresses and bed box springs when securing a room); see also United States v. Bass, 315 F.3d 561, 564 (6th Cir. 2002) (upholding the reasonableness of a search that led to the seizure of a shotgun where an officer lifted up a bed box spring to look for a fugitive potentially hiding under the bed); United States v. Chambers, 228 F. Supp. 2d 474, 478-79 (D. Del. 2002) (finding that it was reasonable for an officer to lift up a mattress that was lying on the ground during a protective sweep provided there was a possibility that the suspect was "hiding in or under the bed"). Here, both detectives testified regarding their substantial experience in searching for fugitives, with Detective Criner testifying that he has executed thousands of search and arrest warrants. Both testified that fugitives routinely hide in hollowed-out spaces, including mattresses and bed box springs. Detective Criner testified that he personally has found approximately 100 fugitives hiding in mattresses or bed box springs during his career. As such, a reasonable officer could believe that a fugitive might hide in a mattress or bed box spring, making the search of the bed mattress reasonable.

As to Johnson's pretext argument, even assuming *arguendo* that

-6-

the true purpose behind searching the bed was to locate evidence for an unrelated murder investigation, the detectives' motives would not negate the lawfulness of the search. As the Supreme Court has explained:

> Fourth Amendment reasonableness is predominantly an objective inquiry. We ask whether the circumstances, viewed objectively, justify the challenged action. If so, that action was reasonable *whatever* the subjective intent motivating the relevant officials. This approach recognizes that the Fourth Amendment regulates conduct rather than thoughts and it promotes evenhanded, uniform enforcement of the law.

Ashcroft v. al-Kidd, 563 U.S. 731, 736 (2011) (internal citations, quotations, and alterations omitted) (emphasis original); see also Whren v. United States, 517 U.S. 806, 813 (1996). This rule is subject to a few exceptions, none of which are relevant here. Id. Whether the search of the bed was pretextual has no bearing on its lawfulness. It is recommended that the motion to suppress the gun be denied.

**B.   Suppression of Statement**

The government concedes that Johnson's statement to law enforcement was obtained in violation of Miranda and that the statement cannot be used in the government's case-in-chief. Given this, it is recommended that Johnson's motion to suppress his statement to law enforcement be granted.

**III. RECOMMENDATION**

For these reasons, it is recommended that the motion to suppress be denied as to the firearm and granted as to Johnson's statement.

Respectfully submitted,

s/ Tu M. Pham
TU M. PHAM
Chief United States Magistrate Judge

August 28, 2020
Date

**NOTICE**

**ANY OBJECTIONS OR EXCEPTIONS TO THIS REPORT MUST BE FILED WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY OF THE REPORT. 28 U.S.C. § 636(b)(1)(C). FAILURE TO FILE THEM WITHIN FOURTEEN (14) DAYS MAY CONSTITUTE A WAIVER OF OBJECTIONS, EXCEPTIONS, AND ANY FURTHER APPEAL.**