# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# WESTERN DIVISION

___

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                      Case No. 2:19-cr-20231-MSN

AMIRI JOHNSON,

    Defendant.

___

**ORDER ADOPTING REPORT AND RECOMMENDATION AND ORDER DENYING IN PART AND GRANTING IN PART DEFENDANT'S MOTION TO SUPPRESS**

___

On December 16, 2019, Defendant Amiri Johnson filed a motion to suppress. (ECF No. 30.) Pursuant to an Order of Reference, (ECF No. 31), the Chief Magistrate Judge issued a Report and Recommendation ("Report") on August 28, 2020, recommending that Defendant's motion be granted in part and denied in part. (ECF No. 61 at PageID 103.) On April 14, 2021, the Court held a *de novo* hearing on Defendant's Motion to Suppress. (ECF No. 78.) For the reasons below, the Court **ADOPTS** the Report and **GRANTS IN PART** and **DENIES IN PART** Defendant's motion.

## Background

**A. Suppression Hearing Before Chief Magistrate Judge Pham**

Defendant's motion seeks to suppress "any and all physical evidence and any statements or admissions alleged to have been made by the Defendant as a product of the search conducted on March 12, 2019, at the home of Ashley Gooch." (ECF No. 30 at PageID 46.) The Chief Magistrate Judge held a hearing on Defendant's motion on August 11, 2020. (ECF No. 56.) At

the hearing before Chief Magistrate Judge Pham, the Government called two witnesses, Detectives Taylor Garrison and Andrew Criner, both of whom work for the Shelby County Sherriff's Office as part of a fugitive apprehension task force. (ECF No. 61 at PageID 103–104.) Defendant called one witness, Ashley Gooch, who was the owner of the residence searched. (*Id.* at PageID 103.)

The Chief Magistrate Judge gleaned the following facts from the testimony offered at the hearing. On March 12, 2019, Detectives Garrison and Criner, along with fellow officers, executed a search warrant for a residence on Belle Haven road to look for Defendant. (ECF No. 61 at PageID 104.) At that time, Defendant had an outstanding arrest warrant for aggravated burglary and robbery. (*Id.*) The search warrant granted the officers the limited authority to search the residence for Defendant. (*Id.*)

When the officers arrived to execute the warrant, the owner of the house, Ashely Gooch, allowed the officers into her home. (*Id.*) After entering the home, officers then fanned out in search for Defendant. (*Id.*) When their initial search of the residence failed to produce Defendant, they circled back, beginning to search areas large enough to hide a person. (*Id.*)

It was on this second pass through the residence that Detective Criner suspected that Defendant might be hiding within the king-size bed located in the main bedroom. (*Id.*) Both Detective Garrison and Detective Criner testified that it was not uncommon to find suspects hiding in hollowed-out spots within furniture. (*Id.*) Detective Criner further testified that he had found around 100 suspects hiding in mattresses or box springs over his career. (*Id.*) To dispel his suspicion, Detective Criner lifted the bed's mattress topper. (*Id.* at PageID 105.) He did not find Defendant lurking beneath; instead, he found a handgun.[1] (*Id.*)

---

1. Defendant notes that the Report fails to determine whether anyone else was present with Detective Criner when he searched Defendant's bedroom. (ECF No. 63 at PageID 261.) Further,

2

Fellow officers apprehended Defendant moments later. (*Id.*) Defendant had retreated to a cubby hole in the residence's kitchen. (*Id.*) Once in custody, an officer asked Defendant if there were any firearms in the house; he responded that there were. (*Id.*) Defendant had not been read his *Miranda* rights before making the statement. (*Id.*)

**B. *De Novo* Suppression Hearing**

The Court held a *de novo* hearing on Defendant's motion on April 14, 2021. (ECF No. 78.) At this hearing, the Government again called Detectives Taylor Garrison and Andrew Criner as witnesses. (ECF No. 79.) Defendant did not call any witnesses. (*Id.*) The Court also received into evidence the search warrant for the Belle Haven residence and various photographs documenting the inside of the residence on March 12, 2019. (*Id.*) Because the testimony offered by Detectives Garrison and Criner at the *de novo* hearing was substantially similar to the testimony they offered at the suppression hearing in front of Chief Magistrate Judge Pham, the Court will address key aspects of their testimony when analyzing the merits of Defendant's motion.

## Standard of Review

A district court has the authority to "designate a magistrate judge to conduct hearings, including evidentiary hearings, and to submit to a judge of the court proposed findings of fact and recommendations for the disposition, by a judge of the court, of any motion." 28 U.S.C. § 636(b)(1)(B). The district court has appellate jurisdiction over any decisions the magistrate judge issues pursuant to such a referral. 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(a).

The standard of review the district court applies depends on the nature of the matter considered by the magistrate judge. "[U]pon proper objection by a party, a district court must

---

Defendant asserts that there was no testimony nor evidence showing Defendant was present in the bedroom when the search occurred. (*Id.*)

review *de novo* a magistrate judge's ruling on a motion to suppress." *United States v. Quinney*, 238 F. App'x 150, 152 (6th Cir. 2007) (citing 28 U.S.C. § 636(b)(1)); *United States v. Curtis*, 237 F.3d 598, 603 (6th Cir. 2001)). The Court need not review—under a *de novo* or any other standard—those aspects of a report and recommendation to which no objection is made. *Thomas v. Arn*, 474 U.S. 140, 150–52 (1985). Objections to any part of a magistrate judge's disposition "must be clear enough to enable the district court to discern those issues that are dispositive and contentious." *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995); *see also Arn*, 474 U.S. at 147 (stating that the purpose of the rule is to "focus attention on those issues . . . that are at the heart of the parties' dispute."). A general, frivolous, or conclusory objection will be treated as if no objection had been made. *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 509 (6th Cir. 1991); *see also Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986) ("[T]he district court need not provide *de novo* review where the objections are '[f]rivolous, conclusive or general.'" (internal quotation marks omitted)).

## Analysis

Defendant's motion seeks to suppress statements made by Defendant before receiving *Miranda* warnings as well as the firearm seized by law enforcement during the search of Ms. Gooch's residence on March 12, 2019. (ECF No. 30 at PageID 46.) The Court will address each of Defendant's arguments in turn.

A. **Defendant's Statements**

Defendant argues that his statements to officers affirming that there were guns in the Belle Haven residence were made in violation of *Miranda*. (ECF No. 30 at PageID 49–50.) After he had been placed into custody and in response to a question from law enforcement, Defendant stated that there were guns in the residence and directed Ms. Gooch to "get my gun with the beam on it."

4

(ECF No. 61 at PageID 105.) The Report recommended that Defendant's statements be suppressed. (*Id.* at PageID 109–110.) The United States does not object to the Report's conclusion. (*Id.* at PageID 109.) Accordingly, the Court **ADOPTS** the Report's findings as to Defendant's statements and **GRANTS** Defendant's Motion to Suppress.

B. <u>**Seizure of the Firearm**</u>

Defendant next moves to suppress the firearm seized by law enforcement, arguing that Detective Criner exceeded the scope of the search warrant by lifting the mattress topper. (ECF No. 30 at PageID 48–49.) The Report recommends that Defendant's motion be denied to the extent it seeks suppression of the firearm. (ECF No. 61 at PageID 109.)

The Fourth Amendment of the United States Constitution provides that:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV; *see also Skinner v. Ry. Labor Execs.' Ass'n*, 489 U.S. 602, 619 (1989) ("The Fourth Amendment does not proscribe all searches and seizures, but only those that are unreasonable."). "The chief purpose of the particularity requirement [is] to prevent general searches by requiring a neutral judicial officer to cabin the scope of the search to those areas and items for which there exists probable cause that a crime has been committed." *United States v. Richards*, 659 F.3d 527, 537 (6th Cir. 2011) (quoting *Baranksi v. Fifteen Unknown Agents of the Bureau of Alcohol, Tobacco, Firearms*, 452 F.3d 433, 441 (6th Cir. 2006)) (alteration in original).

Before delving further, the Court feels the need to clarify what is and what is not at issue here. First, it is undisputed that officers had a valid search warrant or "body warrant" to search

5

the Belle Haven residence for Defendant. (*See* Exhibit 1.)[2]  Building on that, while the parties discussed the application of the protective sweep doctrine at both the suppression hearing in front of Chief Magistrate Judge Pham and in their briefs, (*see, e.g.*, ECF No. 30 at PageID 48;ECF No. 62 at PageID 237), the parties did not revisit this line of argument at the *de novo* hearing.  Indeed, at the *de novo* hearing, defense counsel asserted that officers "exceeded the scope of the search warrant."[3]  (*See also* ECF No. 30 at PageID 48.)  It is also not disputed that, if officers did not exceed the scope of the search warrant, the plain view doctrine would allow for the seizure of the firearm.  (ECF No. 61 at PageID 107.)  Thus, the question for the Court to answer is whether Detective Criner's actions exceeded the scope of the search warrant.

It is axiomatic that law enforcement's search authority necessarily extends to those areas in which the object (here the Defendant) could be found; in other words, the authority to search is congruent to the item being searched for.  *See United States v. Ross*, 456 U.S. 798, 820–21 (1982); *Maryland v. Garrison*, 480 U.S. 79, 87 (1987) ("[T]he purposes justifying a police search strictly limit the permissible extent of the search."); *United States v. Parrish*, 942 F.3d 289, 293 (6th Cir. 2019) (citing *Horton v. California*, 496 U.S. 128, 140–41 (1990); *Ross*, 456 U.S. at 823–24).  Thus, suppression is warranted "[i]f the scope of the search exceeds that permitted by the terms of a validly issued warrant[.]"  *Horton*, 496 U.S. at 140.  It is also equally well-understood that officers can "draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that 'might well elude an untrained

---

2.  In the box specifying what the warrant authorized the search for, the warrant listed Defendant's name along with a physical description.  (Exhibit 1.)

3.  Important to note, counsel at the *de novo* hearing was different from counsel that represented Defendant when the motion to dismiss was filed and originally argued to the Chief Magistrate Judge.  (*See* ECF Nos. 17 and 66.)

person'" while out in the field. *Untied States v. Arvizu*, 534 U.S. 266, 273 (2002) (quoting *United States v. Cortez*, 449 U.S. 411, 418 (1981)).

In determining whether Detective Criner exceeded the authority provided by the warrant, the cases relied on by the Chief Magistrate Judge are instructive. (*See* ECF No. 61 at PageID 108.) Although these cases primarily address the application of the protective sweep doctrine, which is not at issue here, they provide insight on whether a reasonable officer could believe that Defendant could be hidden within either the mattress or box spring.[4] In *United States v. Chambers,* the Court suppressed the discovery of firearms found between a mattress and box spring. 228 F. Supp. 2d 474, 479 (D. Del. 2002). The Court reasoned that suppression was warranted because the officer had already checked the bed to ensure that the suspect was not hiding beneath during his initial walk through. *Id.* at 478–79. The Court, however, did not question the officer's act of lifting the bed from its base during his initial walk through. *Id.* ("Upon lifting the bed approximately one foot the first time, PO McLaughlin had taken the requisite precautions to ensure his safety and had effectively neutralized the bed as a place 'from which an attack could be immediately launched.'").

Further, in *United States v. Bass*, the Court upheld the officer's action of lifting up a bed by its box spring based partly on the officer's testimony that "the bed [was] on a frame sufficiently high enough for a person to be hiding under the bed." 315 F.3d 561, 564 (6th Cir. 2002). And finally, in *United States v. Lanier*, the Court stated that "it is reasonable to search closets and under beds to ensure that no one was hiding there." 285 F. App'x 239, 242 (6th Cir. 2008) (citing *Bass*, 315 F.3d at 564). Although the *Lanier* Court did note that the defendant waived this issue on

---

4. These lines of cases are helpful because under *Maryland v. Buie*, 494 U.S. 325 (1990), officers are granted limited authority to conduct a "protective sweep" to search those areas "**where a person may be found**." 494 U.S. at 335 (emphasis added).

7

appeal "by addressing it in a perfunctory manner," the Court nonetheless agreed with the lower court's decision finding the officer's actions reasonable. *Id.*

In addition to these cases, other courts have reached similar conclusions that it is reasonable to believe that a suspect could hide within a mattress or box spring. *See, e.g.*, *United States v. Garcia-Lopez*, 809 F.3d 834, 839 (5th Cir. 2016) ("Garcia–Lopez fails to take into account that it was logical under the specific facts of this case to suspect that a person might be hiding in a hollowed box spring."); *United States v. Williamson*, 250 F. App'x 532, 533 (4th Cir. 2007) ("Based on this past experience, the district court held that Lindsay could have reasonably believed that an individual may have been hiding under the mattress.").

Defendant counters this argument by asserting that it was unreasonable to think Defendant could be hiding within the mattress or box spring. Here, the Court focuses on a particular line of testimony by Detective Criner elicited on cross examination. After questioning from defense counsel, Detective Criner stated that: (1) the bed did not to appear to be tampered with; (2) he did not hear any noises coming from the bed such as Defendant breathing; and (3) he had looked underneath the frame of the bed and confirmed that Defendant was not there. In light of this, Defendant argues that Detective Criner's decision to lift the mattress topper to begin to search the bed is akin to the officer's impermissible second pass through disavowed by the Court in *Chambers*.

The Court disagrees. First, although Detective Criner confirmed that Defendant was not hiding beneath the bed, he had not confirmed whether Defendant was hiding **between** the mattress and box spring. Notably, Detective Criner testified at both the initial suppression hearing and at the *de novo* hearing that he has found suspects hiding between a mattress and box spring. (ECF No. 62 at PageID 183.) Additionally, to dispel this suspicion, Detective Criner testified that it was

8

his practice to search from the top-down, pulling a bed apart layer by layer.  Second, the fact that Detective Criner did not observe signs that someone tampered with the bed nor heard any noises indicating someone might be hiding inside does not undercut his actions.  Indeed, it would be a poor hiding spot if Defendant left noticeable signs of tampering or gave away his presence by making noises.   Therefore, the Court does not accept Defendant's argument that it was unreasonable for Detective Criner to believe that Defendant could be hiding within either the mattress or box spring.

It is also worth pointing out that Detective Criner's suspicion that Defendant could be hiding within the bed was not based on a hunch.  Rather, both Detective Criner and Garrison testified at both hearings to their experience in finding suspects in similar hiding spots and the lengths suspects will go to evade apprehension.  Detective Criner is allowed to rely on this past experience while out in the field.  *See Arvizu*, 534 U.S. at 273.

Accordingly, the Court finds that Detective Criner did not exceed the scope of the search warrant's authority when he lifted the mattress topper in search of Defendant.  Further, although the warrant did not list a firearm as an item to be seized, the seizure of the firearm falls under the plain view doctrine.  Therefore, the Court **ADOPTS** the Report's finding and **DENIES** Defendant's motion to the extent it seeks suppression of the firearm.

## Conclusion

For the reasons stated, the Court **ADOPTS** the Chief Magistrate Judge's Report and Recommendation and **DENIES IN PART** and **GRANTS IN PART** Defendant's motion.

**IT IS SO ORDERED**, this the 16th day of July, 2021.